# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

LARRY T.,                                          :
                                                   :
      Plaintiff,                             :          CIVIL ACTION FILE NO.
                                                   :          1:15-cv-00960-AJB
  v.                                            :
                                                   :
COMMISSIONER, SOCIAL                               :
SECURITY ADMINISTRATION,[1]                        :
                                                   :
      Defendant.                             :

## <u>O R D E R   A N D   O P I N I O N</u>[2]

Plaintiff brought this action pursuant to §§ 205(g) and 1631(c) of the Social

Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review

of the final decision of the Commissioner of the Social Security Administration ("the

Commissioner") denying his application for Supplemental Security Income ("SSI")

---

[1]     Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who sues or is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill no longer is the Acting Commissioner, the Clerk is **DIRECTED** to identify Defendant by the official title rather than by name.

[2]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* [Doc. 25] and Dkt. Entry dated 9/19/2017). Therefore, this Order constitutes a final Order of the Court.

and Disability Insurance Benefits ("DIB").[3] For the reasons set forth below, the undersigned **AFFIRMS** the final decision of the Commissioner and **DENIES** Plaintiff's request for remand pursuant to sentence six of 42 U.S.C. § 405(g).

## I.    *PROCEDURAL HISTORY*

On February 3, 2011, Plaintiff filed his application for SSI and DIB alleging a disability onset date of October 15, 2008. [Record (hereinafter "R") 136-52]. These claims were denied initially on June 22, 2011, and upon reconsideration on November 10, 2011. [R87-107]. Thereafter, Plaintiff filed a written request for hearing. [R108]. Plaintiff appeared and testified, unrepresented, at a hearing before an Administrative Law Judge ("ALJ"), where a vocational expert ("VE") also testified.

---

[3]    Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, provides for SSI for the disabled, whereas Title II of the Social Security Act provides for federal DIB, 42 U.S.C. § 401, *et seq.* The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations herein should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

AO 72A
(Rev.8/8
2)

[R32-86].  On June 28, 2013, the ALJ denied Plaintiff's application for disability benefits.  [R12-28].  Plaintiff then filed an appeal with the Appeals Council, which was denied on February 5, 2015, making the ALJ's decision the final decision of the Commissioner.  [R1-3].

Plaintiff subsequently filed this action on April 2, 2015, seeking review of the Commissioner's decision.  [Docs. 1-1, 5].  After service of process, the answer and transcript were filed on August 11, 2017.  [Docs. 18, 19].  On September 19, 2017, Plaintiff, now represented, filed a brief arguing for reversal of the Commissioner's decision, [Doc. 26], and on November 13, 2017, the Commissioner filed a response in support of the decision, [Doc. 28], to which Plaintiff replied, [Doc. 29].  The matter is now before the Court upon the administrative record, and the parties' pleadings and briefs,[4] and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    *PLAINTIFF'S CONTENTIONS*

Plaintiff claims that reversal and remand are required because:

1.    The hypothetical which the ALJ posed to the VE insufficiently defined Plaintiff's limitations.

---

[4]    Neither party requested oral argument. (*See* Dkt.).

AO 72A
(Rev.8/8
2)

     2.      The ALJ failed to develop a full and fair record.

     3.      The Court should remand under sentence six of 42 U.S.C. § 405(g) so that the Commissioner can address new and material evidence.

[Doc. 26 at 3].

## III.   *STATEMENT OF FACTS*

### A.   **Background**

Plaintiff was born in 1957 and was 51 years old on the alleged onset date. [R136]. He completed high school and two years of college. [R189]. Plaintiff worked in the past as a construction laborer, telecommunication worker, and sales person. [*Id.*]. He alleged disability due to pain in his lower back and both legs, impairment of left index finger, and depression. [R188].

### B.   **Lay testimony**

Plaintiff was unrepresented during the administrative hearing and, although the ALJ explained that he had the right to request a continuance in order to obtain representation, he stated that he wished to waive his right to representation and go forward with the hearing. [R34-36].

Plaintiff testified that he was unable to work due to pain in his left leg, lower back, and right hip. [R49-50]. He noted that he could not sit or stand for more than an

4

hour at a time.  [R49].  Plaintiff also stated that he developed glaucoma while working in his last job as a telemarketer.  [R52].  He explained that if he tried to stare at a computer for too long, a headache develops over both eyes.  [R54].

In response to questions about his earnings for calendar year 2009, Plaintiff indicated that he had not worked since 2008, but the ALJ noted that his tax records showed $11,026 in self-employment income for 2009.  [R45-48].  The ALJ asked Plaintiff to contact the Internal Revenue Service to clarify this issue.  [R82-85].  After the hearing, Plaintiff sent the ALJ a copy of his tax return for 2009, along with a letter clarifying his testimony at the hearing.  [R178-83, 246].  He wrote that he did work for a telemarketing company for the first four months of 2009.  [R246].  He was terminated because he started taking too many days off of work due to his pain.  [*Id.*].  He stated that he had testified incorrectly because his mother had died that same year and he was confused about the timeline.  [*Id.*].

### C.    Medical records

#### 1.    Treatment records

In October 2008, Plaintiff saw Dr. Shantu Kumar, a primary care physician, at the Atlanta VA Medical Center ("the VA").  [R496-502].  He reported that he was feeling depressed over his mother's death earlier that year and described chronic pain

5

in his left leg that began in 1974, when he was serving in the Navy.  [R496].  He was

referred for a mental health evaluation and was put on a trial of Tramadol[5] for his leg

pain.  [R500-01].

Plaintiff returned for a follow-up in January 2010.  [R408-10].  He requested

medications to treat his leg pain.  [R409].  Plaintiff also complained of insomnia, and

Dr. Kumar gave him a prescription for Trazodone.[6]  [*Id.*].  Other problems addressed

during this visit included blurred vision and hearing loss.  [R411].

In December 2010, Plaintiff saw Dr. Diana Sodiq, a rehabilitation specialist.

[R322-23].  He noted that he had pain in his left shin that occasionally radiated to his

thigh and his leg.  [*Id.*].  A physical examination showed that he had a normal gait and

a full range of motion in his spine.  [R323].  Dr. Sodiq discussed further workups, such

---

[5]     Ultram (tramadol) is in a class of medications called opiate (narcotic) analgesics and is used to relieve moderate to moderately severe pain.  MedlinePlus, Tramadol, http://medlineplus.gov/druginfo/meds/a695011.html (last visited 9/23/18).

[6]     Trazodone is a serotonin modulator typically used to treat depression. MedlinePlus, Trazodone, https://medlineplus.gov/druginfo/meds/a681038.html (last visited 9/23/18).

AO 72A
(Rev.8/8
2)

as a CT scan[7] or an EMG,[8] but Plaintiff's main request was for pain medication. [R324]. He was reluctant to try Gabapentin[9] because he did not want a "nerve medication," but he endorsed a good response to Percocet[10] in the past. [*Id.*]. Dr. Sodiq prescribed Tramadol and noted that Plaintiff would be switched to hydrocodone if the Tramadol was not effective. [*Id.*].

During 2011, Plaintiff continued to follow up at the VA for medical care. In January, a physical therapist trained him to use a cane for ambulation. [R316-17].

---

[7] Computed tomography ("CT") imaging uses x-ray equipment to make cross-sectional pictures of the body. MedlinePlus, CT Scans, http://www.nlm.nih.gov/medlineplus/ctscans.html (last visited 9/23/18).

[8] "EMG" is an abbreviation for electromyogram. *PDR Med. Dictionary* 569 (1st ed. 1995). Electromyography measures the response of muscles and nerves to electrical activity. It is used to help determine conditions that might be causing muscle weakness, such as nerve disorders. KidsHealth, Electromyography, http://kidshealth.org/parent/general/sick/emg.html (last visited 9/23/18).

[9] Gabapentin, also known by the brand name Neurontin, is often used to help control certain types of seizures in patients who have epilepsy. Gabapentin is also used to relieve the pain of postherpetic neuralgia (the burning, stabbing pain or aches that may last for months or years after an attack of shingles) and restless legs syndrome. MedlinePlus, Gabapentin, https://medlineplus.gov/druginfo/meds/a694007.html (last visited 9/23/18).

[10] Percocet is a combination of oxycodone and acetaminophen and is a narcotic analgesic used to relieve moderate-to-severe pain. MedlinePlus, Oxycodone, https://medlineplus.gov/druginfo/meds/a682132.html (last visited 9/23/18).

7

AO 72A
(Rev.8/8
2)

The next month, an x-ray showed that Plaintiff had mild spondylosis[11] in his lumbar spine at L3-L4. [*Id.*]. He was given a prescription for oxycodone.[12] [R452-53].

In March 2011, Plaintiff was evaluated for admission into a VA program designed to assist homeless veterans. [R427-30, 432-37]. A social worker noted that he was casually dressed and had a well-kept appearance. [R434]. He denied any suicidal ideation or psychosis. [*Id.*]. He reported feeling some depression over the death of his mother three years previously. [R435]. However, his mood was euthymic and his affect was appropriate. [R436]. The social worker noted that Plaintiff "cannot work the way he likes secondary to his leg." [*Id.*]. The next month, Plaintiff was given a housing voucher. [R568].

In August 2011, Plaintiff saw Dr. Andrew Geller for treatment of his lower back pain. [R551]. Plaintiff noted that the pain was worse with bending, side flexion, and extension. [*Id.*]. A physical examination showed that Plaintiff had 5/5 strength in his upper and lower extremities, and +2 deep tendon reflexes. [*Id.*]. His paraspinal

---

[11] "Spondylosis" refers to stiffening vertebra and is "often applied nonspecifically to any lesion of the spine of a degenerative nature." *PDR Med. Dictionary* 1656 (1st ed. 1995).

[12] Oxycodone is a narcotic used to relieve pain. MedlinePlus, Oxycodone, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682132.html (last visited 9/23/18).

AO 72A
(Rev.8/8
2)

muscles[13] were tender to palpitation.  [*Id.*].   In addition, he had a reduced range of

motion in his spine due to muscle spasms.  [*Id.*].  Dr. Geller prescribed Sulindac[14] and

a TENS unit[15] trial for his low back, and ordered an MRI of Plaintiff's lumbar spine.[16]

[*Id.*].

Over the next month, Plaintiff participated in several physical therapy sessions,

with good results.  [R546-50].  Later in August, Plaintiff checked in with a VA social

worker, Ms. Mali Collis-Abdulla.  [R545].  He stated that he was doing well and

---

[13]     Paraspinal means adjacent to the spinal column.  *See* Merriam-Webster Medical Dictionary, *Paraspinal*, http://www2.merriam-webster.com/cgi-bin/mwmedsamp?book=Medical&va=sample (last visited 9/23/18).

[14]     Sulindac is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild to moderate pain and help relieve symptoms of arthritis (e.g., osteoarthritis and rheumatoid arthritis) or acute gout, such as inflammation, swelling, stiffness, and joint pain such as spondylitis.  *Sulindac*, https://www.mayoclinic.org/drugs-supplements/sulindac-oral-route/description/drg-20069763 (last visited 9/23/18).

[15]     "TENS" is an acronym for transcutaneous electric nerve stimulation, which is a method to reduce pain with electrical impulses.  Nat'l Osteoporosis Found., *Protecting Your Fragile Spine* 11, *available at* https://cdn.nof.org/wp-content/uploads/2016/02/Protecting-Your-Fragile-Spine.pdf (last visited 9/23/18).

[16]     A lumbar magnetic resonance imaging scan is a non-invasive way to create detailed pictures of the part of the spine that runs though the lower back.  *See* MedlinePlus, *Lumbar MRI scan*, http://www.nlm.nih.gov/medlineplus/ency/article/007352.htm (last visited 9/23/18).

AO 72A
(Rev.8/8
2)

"continues to rent out his truck to people moving" but that the people sometimes do not realize that he personally is not going to help them move. [*Id.*].

In October 2011, Plaintiff told Ms. Collis-Abdulla that he was doing well and did not have any suicidal or homicidal ideation. [R726]. He noted that he is often not at home because he rents his truck out to other people. [*Id.*]. Plaintiff was alert and well-oriented, and spoke with a normal rate, tone, and volume. [R727].

In November 2011, Plaintiff saw VA rehabilitation specialist, Dr. Sushma Chandan, and VA resident, Dr. Rajeev Valvani. [R715]. He continued to complain of back pain that was radiating into his left leg. [*Id.*]. A recent MRI showed that he had an annular tear and disc protrusion at L5-S1, which was contacting the descending S1 nerve root. [R717]. A physical examination showed that Plaintiff had a normal gait pattern and was able to heel and toe walk. [R718]. He had increased pain with flexion[17] and extension of his lumbar spine. [*Id.*]. He had 5/5 strength in his lower extremities, and his sensation was intact to light touch. [*Id.*]. Plaintiff told the doctors that the only medication that had worked for his pain was oxycodone. [*Id.*]. A drug screen performed during this visit tested positive for marijuana. [R712]. After learning

---

[17]    Flexion refers to the bending of the spine "so that the concavity of the curve looks forward." *PDR Med. Dictionary* 663 (1st ed. 1995).

10

of the results, Plaintiff acknowledged that he used marijuana to control his pain "about once a month or so." [R713]. He explained that all of the pain medications which he had tried except for Lortab[18] caused him to have "horrible dreams." [*Id.*]. Due to the positive drug test, Dr. Chandan declined to prescribe any pain medications. [R707].

In December 2011, Plaintiff told Ms. Collis-Abdulla that he was planning to put his truck up for sale due to financial issues. [R705]. Otherwise, he was doing well. [*Id.*]. Plaintiff noted that he continued to earn funds from renting the truck out, and did not want to do anything to jeopardize his application for VA disability benefits. [*Id.*].

In a January 2012 follow-up appointment with Dr. Chandan, Plaintiff complained of an aching, intermittent pain in his groin and hip. [R701]. Physical examination showed that Plaintiff had sacroiliac tenderness and a limited range of motion in his right hip. [R701-02]. He had normal muscle strength and normal deep tendon reflexes in his legs. [R702]. Dr. Chandan prescribed Lodine.[19] [*Id.*]. Later that

---

[18]     Lortab is an opioid pain medication that contains a combination of acetaminophen and hydrocodone and is used to relieve moderate to severe pain. Drugs.com, Lortab, http://www.drugs.com/lortab.html (last visited 2/23/18).

[19]     Lodine (etodolac) is an NSAID that works by reducing hormones that cause inflammation and pain in the body. Lodine is used to treat mild to moderate pain, osteoarthritis, or rheumatoid arthritis. Drugs.com, Lodine, https://www.drugs.com/lodine.html (last visited 9/24/18).

AO 72A
(Rev.8/8
2)

month, Plaintiff cancelled a mental health appointment because had "a chance to drive a car to Cincinnati and make a little money." [R696]. In February, Plaintiff told Ms. Collis-Abdulla that he had "a job today loading a mattress at Goodwill." [R689]. He denied any significant mental health problems. [R690].

In April 2012, Plaintiff visited the VA for x-rays of his lower extremities. [R627]. The imaging showed small bilateral bone spurs in both of Plaintiff's ankles. [*Id.*]. In addition, there were mild degenerative changes in the bones of both of his feet. [R628-29].

Plaintiff returned to the VA a couple of weeks later for an ophthalmology check-up. [R673-77, 756-60]. An examination showed that he had a moderate degree of glaucoma, which was worse on the right eye as compared to the left. [R676, 759]. He also had a developing cataract in the right eye but that it did not affect his activities of daily living. [R676, 760]. Plaintiff was given a prescription for Latanoprost.[20] [R676, 759].

---

[20]    Latanoprost comes as eye drops which are used to treat glaucoma (a condition in which increased pressure in the eye can lead to gradual loss of vision) and ocular hypertension (a condition which causes increased pressure in the eye). Latanoprost is in a class of medications called prostaglandin analogs. It lowers pressure in the eye by increasing the flow of natural eye fluids out of the eye. https://medlineplus.gov/druginfo/meds/a697003.html (last visited 9/23/18).

AO 72A
(Rev.8/8
2)

Later that month, Plaintiff told Ms. Collis-Abdulla that he was "doing OK." [R755]. He reported having "a little business here and there moving furniture." [*Id.*]. His attention and concentration were sufficient, and his memory was intact. [R756]. He had a normal mood, an appropriate affect, and relevant thought processes. [*Id.*]. His judgment was intact, and his insight was fair. [*Id.*].

In August 2012, Plaintiff told Ms. Collis-Abdulla that he was doing well. [R648]. He had visited his sister the previous month and was looking forward to returning to Ohio for his niece's wedding. [R648-49]. Ms. Collis-Abdulla noted that Plaintiff was dressed appropriately and was neatly groomed. [R649]. His memory was intact and his attention and concentration were sufficient. [*Id.*]. His thought content was relevant and his judgment was within normal limits. [*Id.*]. His insight into his condition was fair. [*Id.*].

The next month, Plaintiff told Ms. Collis-Abdulla about his niece's wedding. [R647]. He stated that it had been hard for him to visit Ohio since his mother had died. [*Id.*]. His living situation was under control, and he was enjoying his relationship with his family. [*Id.*]. A mental status examination was within normal limits. [R647-48].

Finally, in November 2012, Plaintiff returned to the VA with complaints of eye pain. [R732-33]. He stated that his pain had started after he ran out of eye drops the

13

prior week. [R732]. The attending physician renewed Plaintiff's prescription for latanoprost and referred him to the eye clinic for further treatment. [R733]. The notes from this visit show that Plaintiff was using a cane for balance. [*Id.*].

## 2. Consultative examinations

Dr. Dianne Bennett-Johnson saw Plaintiff for a consultative examination in April 2011. [R249-56]. His chief complaints were an old left leg injury and worsening lower back pain. [R253]. Plaintiff noted that he was given a cane at the VA and used it both inside and outside of his home. [*Id.*]. Plaintiff also stated that his left index finger was non-functional due to an injury that he suffered in 1996. [*Id.*]. In addition, he described a history of depression. [R253-54].

On examination, Dr. Bennett-Johnson noted that Plaintiff was not in acute distress. [R254]. He was walking with a single-point cane, but was able to ambulate without it. [*Id.*]. He had a limited range of motion in his lumbar spine, and his left index finger was fixed in a flexed position. [R255]. Plaintiff's mood appeared to be depressed and irritable. [*Id.*]. Plaintiff walked with a slow gait that was slightly listing to the left side. [*Id.*]. Dr. Bennett-Johnson's diagnoses included chronic leg pain, greater on the left than the right; lumbar pain with radiation to the right hip; a left index

14

AO 72A
(Rev.8/8
2)

finger injury; uncomplicated hypertension; depression; and diminished hearing with the use of a hearing aid. [*Id.*].

In June 2011, Dr. William Hand, a non-examining medical consultant, completed a residual functional capacity assessment for the state agency. [R263-70]. Dr. Hand determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. [R264]. He found that Plaintiff could sit, stand, or walk for six hours in an eight-hour workday. [*Id.*]. He concluded that Plaintiff did not have any postural or manipulative limitations. [R265-66].

In October 2011, Dr. Bettye Stanley, a non-examining state agency physician, completed a physical RFC questionnaire. [R602-09]. She determined that Plaintiff could lift 20 pounds occasionally and up to 10pounds frequently. [R603]. Dr. Stanley indicated that Plaintiff could sit, stand, or walk for up to six hours in an eight-hour workday. [*Id.*].

### D.    Vocational expert's testimony

At the hearing before the ALJ, the VE testified that assuming a hypothetical person with Plaintiff's characteristics could lift 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk for six out of eight hours, but would need to switch positions every hour or two; and would have "limited use of the non-dominant index

finger," which would not affect the person's ability to lift, but which "could affect jobs with fine manipulation," such as those that require keyboarding skills, could perform Plaintiff's past work as a telemarketer (DOT number # 299.357-014) or a telephone sales operator (DOT number #235.662-026), and that his observations were consistent with the Dictionary of Occupational Titles. [R69, 71-72]. The VE further testified that those jobs could still be performed if the individual were limited to superficial contact with coworkers, and would have to use a cane in the workplace. [R72].

### E.    Newly-submitted evidence

Attached to his brief in this court, Plaintiff submitted evidence that he had not previously submitted either to the ALJ or the Appeals Council. First, he submitted documentation from the VA showing that he has been diagnosed with AL Amyloidosis,[21] which ailment was described by Dr. Maria Ribeiro of the VA's

---

[21]    In general, amyloidosis is caused by the buildup of an abnormal protein called amyloid. Amyloid is produced in bone marrow and can be deposited in any tissue or organ. The specific cause of the condition depends on the type of amyloidosis a person has. AL amyloidosis (immunoglobulin light chain amyloidosis) is the most common type and can affect the heart, kidneys, skin, nerves and liver. Previously known as primary amyloidosis, AL amyloidosis occurs when the bone marrow produces abnormal antibodies that cannot be broken down. The antibodies are deposited in tissues as amyloid, interfering with normal function. Mayo Clinic, Patient Care & Health Information, Diseases and Conditions, https://www.mayoclinic.org/diseases-conditions/amyloidosis/symptoms-causes/syc-20353178 (last visited 9/24/18).

AO 72A
(Rev.8/8
2)

Hematology/Oncology Department as "terminal." [Doc. 26-1 at 2]. According to Dr. Ribeiro, Plaintiff first was diagnosed with this condition in January 2015 and began undergoing chemotherapy the following month. [*Id.*]. Both Dr. Ribeiro and Dr. Chunzi Xia, also in the VA Hematology/Oncology Department, noted that his AL amyloidosis was likely caused by his exposure to Agent Orange while serving on the USS Saratoga after that ship returned from a combat deployment in Vietnam. [*Id.* at 2-3].

Plaintiff also submitted his own letter responding to his social worker's statements about his work activity. [Doc. 26-2 at 2]. In the letter, Plaintiff denies that he ever used his truck to supplement his income, and he states that the reference to picking up furniture at Goodwill referred to an incident where his wife purchased a bunk bed and he drove the truck to pick it up. [*Id.*]. Plaintiff notes in the letter that his wife[22] loaded the bed onto the truck by herself, without his assistance. [*Id.*]. He states that his social worker must have misunderstood what he said to her during their conversation. [*Id.*].

## IV.    *ALJ'S FINDINGS OF FACT*

The ALJ made the following findings of fact:

---

[22]    The Court notes that, on his applications for benefits [R136, 146], and his June 2011 psychiatric examination with Dr. Storms, [R258], Plaintiff stated that he had never been married.

17

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.   The claimant has not engaged in substantial gainful activity since October 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3.   The claimant has the following severe impairments: mild lumbar spondylosis; chronic lower left leg pain; a[] history of a L [left] hand injury affecting the L [left] index finger; and a rash of an unknown origin (20 CFR 404.1520(c) *et seq.*, and 20 CFR 416.920(c)).

. . .

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

. . .

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant's ability to perform the full range of light work is compromised because the claimant needs to have the option of alternating between sitting and standing at his workstation every hour or two. In addition, the claimant has limited use of his non-dominant index finger that could affect jobs with fine manipulation, but does not affect lifting or carrying. With regard to postural limitations, the claimant can occasionally climb ladders, ropes or scaffold[s], occasional stooping, and frequently climb ramps and stairs. In addition, the claimant

AO 72A
(Rev.8/8
2)

is limited to frequent balancing, kneeling, crouching, and crawling. The claimant would do best in an environment where there is only superficial contact with co-workers.

. . .

6. The claimant is capable of performing past relevant work as a telemarketer or telephone operator. This work does not requite the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 20 CFR 416.965).

. . .

7. The claimant has not been under a disability, as defined in the Social Security Act, since October 15, 2008, through the date of this decision (20 CFR 404.1520(f) and 20 CFR 416.920(f)).

[R17-23].

The ALJ assigned significant weight to Dr. Johnson's opinion as to Plaintiff's physical capabilities, because she found that the opinion was consistent with the treatment notes, the state agency medical consultants' opinions, and Plaintiff's activities of daily living. [R22]. The ALJ accorded great weight to the opinions of state agency medical consultants–Drs. Stanley and Hand–because they were consistent with treatment notes, Dr. Johnson, the evidence as a whole, and Dr. Chandan's determination on November 9, 2011 that Plaintiff's gait and station were normal. [*Id.*]. However the ALJ gave greater weight to Dr. Stanley's opinion "because the medical evidence

AO 72A
(Rev.8/8
2)

supports the additional limitations she described" but, ultimately, found Plaintiff "further limited than both doctors opined." [*Id.*].

The ALJ determined that Plaintiff's statements about "the intensity, persistence, and limiting effects" of his symptoms were not entirely credible. [R20]. The ALJ observed that Plaintiff's leg pain was intermittent and that he only needed medication for occasional episodes of pain. [R22]. In addition, the ALJ noted that the "records contain numerous references to the claimant working as a furniture mover" and renting out his truck to others. [*Id.*].

The ALJ also concluded that Plaintiff had been "less than candid in his statements to medical providers and this Administrative Law Judge." [R23]. Specifically, the ALJ noted that Plaintiff denied using marijuana during one visit, but later tested positive for that substance. [*Id.*]. The ALJ also noted that the record was "replete with references to the claimant renting his truck out and moving furniture," recounting Plaintiff's statements that

> he continued to earn funds from renting his truck out, but did not want to do anything that would jeopardize his pending disability claims with the VA. . . . [indicating] that [he] was aware that he was earning income and that reporting he is doing so could impact his claim for disability.

[*Id.*]. The ALJ also observed that Plaintiff denied working in 2009, but his tax return "clearly shows substantial income for 2009." [*Id.*].

Based on the above RFC and the VE testimony, the ALJ determined that Plaintiff could return to his past relevant work as a telemarketer or telephone operator. [R23-24]. Therefore, the ALJ found that Plaintiff was not disabled. [R24].

## V.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.

AO 72A
(Rev.8/8
2)

*See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform

AO 72A
(Rev.8/8
2)

other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## VI.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact

23

resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11ᵗʰ Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11ᵗʰ Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11ᵗʰ Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11ᵗʰ Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11ᵗʰ Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11ᵗʰ Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as

24

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

Also, a "court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). In reviewing this additional evidence, the court must evaluate whether this "new evidence renders the denial of benefits erroneous." *Id.* at 1262. This means that the court must "determine whether the Appeals Council correctly decided that the '[ALJ's] action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record.'" *Id.* at 1266-67 (quoting 20 C.F.R. § 404.970(b)).

AO 72A
(Rev.8/8
2)

## VII. CLAIMS OF ERROR

### A. Whether the hypothetical posed to the VE sufficiently defined Plaintiff's limitations.

Plaintiff claims that the ALJ failed to develop the record because the hypothetical question posed to the VE did not adequately define his manipulative limitations. [Doc. 26 at 17]. Although Plaintiff acknowledges that the ALJ noted that Plaintiff had a serious injury in his left index finder which caused it to be permanently fixed in a flexion position and limited his fine motor skills such as keyboarding, he submits that the ALJ erred by not identifying whether this posed frequent, occasional, or no fingering with his left hand. [*Id.*]. Plaintiff claims that this is a serious omission because, with occasional or no fingering, Plaintiff would be unable to perform his past work. [*Id.* (citing DICOT 299.357-014, 1991 WL 672624 (telephone solicitor)[23]; DICOT 235.662-022, 1991 WL 672175 (telephone operator)[24])].

---

[23]    The DOT for this position indicates it requires a finger and manual dexterity level of 4 (defined as "lowest 1/3 excluding bottom 10%") and frequent fingering (defined as "exists 1/3 to 2/3 of the time"). DICOT 299.357-014,1991 WL 672624.

[24]    The DOT for this position indicates it requires a finger and manual dexterity level of 3 (defined as "middle 1/3 of the population") and frequent fingering (defined as "exists 1/3 to 2/3 of the time"). DICOT 235.662-022, 1991 WL 672175.

AO 72A
(Rev.8/8
2)

The Commissioner first responds that Plaintiff injured his left finger in 1996 but continued to work as a telemarketer and telephone operator from 1998 until 2008, belying his claims that his injured left finger prevented him from performing his past work. [Doc. 28 at 15-16]. However, the ALJ did not offer this as a reason for not assessing Plaintiff with particular fingering limitations. [R21]. As such, the Commissioner proffers an impermissible post-hoc rationalization. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making.").

Second, the Commissioner asserts that Plaintiff has cited to no evidence showing that he may be limited to occasional or no fingering and, in, fact, the record does not support these limitations. [*Id.* at 16]. Third, the Commissioner responds that Drs. Hand and Stanley assessed Plaintiff with no manipulative limitations. [*Id.* at 17]. Plaintiff replies that this does not excuse the ALJ's failure to define Plaintiff's limitations with sufficient particularity. [Doc. 29 at 3].

In forming the RFC, "[e]ach function [(*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling)] must be considered separately . . . , even if the final RFC assessment will combine activities. . . ." SSR 96-8p. However, "when there is no

AO 72A
(Rev.8/8
2)

allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p. The claimant is generally responsible for providing the evidence used by the Commissioner to make a finding about the claimant's RFC, but before making a determination that the claimant is not disabled, the Commissioner is responsible for developing a complete medical history, including arranging for a consultative examination if necessary. 20 C.F.R. § 416.945(a)(3).

Here, the Commissioner is correct that Plaintiff has pointed to no records indicating fingering limitations. However, the ALJ observed that "Dr. Johnson noted the claimant had reduced grip in his left hand, which could affect his left hand's ability to grip and pinch. Consequently, limitations from this impairment are reflected in the residual functional capacity." [R21 (internal citations omitted)]. The ALJ then went on to incorporate that limitation in the RFC as "limited use of his non-dominant index finger that could affect jobs with fine manipulation but does not affecting lifting or carrying." [R19 ([citing R71-72])]. The VE testified that a person with those

AO 72A
(Rev.8/8
2)

restrictions could perform Plaintiff's past work as a telemarketer or a telephone sales operator and that his observations were consistent with the DOT. [R69, 72].

Plaintiff's contention that the VE's testimony conflicted with the DOT, despite the VE's explicit affirmation to the contrary, was not raised during the hearing. [Doc. 11 at 19 (citing *Higgins v. Comm'r of Soc. Sec.*, No. 6:11-cv-1221-Orl-KRS, 2012 WL 4327666, at *6 (M.D. Fla. Sept. 20, 2012))]. While this is may be attributable to Plaintiff's *pro se* status, even assuming *arguendo* that there was a conflict between the VE's testimony and DOT, the VE's testimony controls. *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999). *But see Rodriguez v. Comm'r Soc. Sec.*, No. 6:17-cv-1374-Orl-22GJK, 2018 WL 840129, at *4-5 (M.D. Fla. Jan. 25, 2018) (holding that SSR 00-4p instructs the ALJ to elicit a reasonable explanation" for any conflict between the DOT and the VE's testimony before relying on the VE). Even if this Court applies SSR 00-4p, as explained in *Rodriguez*, the ALJ did not err because she specifically asked the VE to identify and explain any inconsistency between the DOT and his testimony. [R69]. As such, the hypothetical posed to the VE stated Plaintiff's limitations with sufficient particularity and the ALJ's reliance on VE findings that may conflict with the DOT is permissible given the VE's testimony. Consequently, the Court finds no reversible error in the Commissioner's conclusion

29

AO 72A
(Rev.8/8
2)

that Plaintiff's left hand limitations did not preclude his past work as a telemarketer or a telephone sales operator.

Second, Plaintiff claims that the ALJ erred by not accounting for his vision impairment and finding that his glaucoma was non-severe. [Doc. 26 at 17-18]. Specifically, Plaintiff opines that the finding that his glaucoma is non-severe is not supported by the evidence because the most recent treatment records showed that Plaintiff had moderately blurred vision in both eyes and was developing a cataract. [*Id.* at 18 (citing [R676, 759])]. The Commissioner responds that substantial evidence supports the ALJ's findings that Plaintiff's vision impairments were not severe because a mere diagnosis does not establish evidence of a severe impairment, and further that Plaintiff's treatment records reflect that he was merely prescribed night-time eyedrops and his glaucoma did not affect his ability to work or activities of daily living. [Doc. 28 at 18-19]. Plaintiff replies that the most recent treatment notes show that his "glaucoma affects his ability to perform basic work activities" because he had moderately blurred vision in both eyes and a developing cataract. [Doc. 29 at 4].

The Commissioner has the better end of the argument, as even the recent records cited by Plaintiff note that his glaucoma does not affect his activities of daily living. [R676, 760].

AO 72A
(Rev.8/8
2)

Consequently, the Court concludes that Plaintiff has not shown reversible error in the Commissioner's finding that Plaintiff's visual impairments are non-severe.

**B.      Whether the ALJ failed to develop the record regarding Plaintiff's physical limitations.**

Plaintiff claims that the ALJ failed to develop the record because, although she found Plaintiff was not entirely credible because he worked during his alleged disability period, she did not question Plaintiff about this during the hearing or give him a chance to explain himself, and ignored his explanatory statement concerning his 2009 tax return. [Doc. 26 at 19-20]. The Commissioner responds, first, that the Plaintiff has not shown that additional testimony had a reasonable possibility of altering the ALJ's decision, as Plaintiff did not challenge the ALJ's determination of Plaintiff's credibility[25] and Plaintiff's medical records, testimony, and 2009 tax returns reflect that he worked after his alleged onset date, at least by driving his truck to help others move. [Doc. 28 at 20-21].

---

[25]      While Plaintiff does not challenge this assertion, the Court observes that Plaintiff's arguments suggest that he is, essentially, challenging the ALJ's credibility determination by contesting the ALJ's factual bases for her credibility choices. As a result, the Court will examine both the factual bases and whether the ALJ's credibility determination was supported by substantial evidence.

Plaintiff replies that the ALJ's only articulated bases for determining Plaintiff's reported subjective impairments were not entirely credible were: (1) two treatment notes wherein Plaintiff described his pain as intermittent; (2) "numerous references to . . . working as a furniture mover[;]" and (3) a lack of candor in his statements regarding alleged work activity. [Doc. 29 at 7]. Plaintiff submits that two of these reasons "rested, in large part, on the ALJ's finding that [Plaintiff] worked after his alleged onset date" which his explanation disproves. [*Id.*].

As a preliminary matter, the ALJ's duty to develop the record "rises to a special duty[26] when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Cowart v. Schweiker*, 662 F.2d 731, 734-35 (11th Cir. 1981) (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. July 17, 1981)). "By implication, where counsel has been waived, the special duty to develop the record does not take effect." *Robinson v. Astrue*, 235 Fed. Appx. 725, 727 (11th Cir. Apr. 11, 2007). In the absence of the special duty, a plaintiff must make a more specific showing of prejudice of the

---

[26] Under this special duty, the ALJ must: (1) "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"; and (2) "be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.' " *Cowart*, 662 F.2d at 734-35 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). To warrant remand for the ALJ's failure to develop the record, there must be a showing of prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985)).

AO 72A
(Rev.8/8
2)

failure to develop the record. *Kelley*, 761 F.2d at 1540 n.2; *see also Brown*, 44 F.3d at 935. This means that a plaintiff must make a "showing of such a clear prejudice or unfairness . . . caused by . . . lack of counsel as would warrant a reconsideration of . . . [her] claims" by the Commissioner. *Clark*, 652 F.2d at 404 (quoting *Cross v. Finch*, 427 F.2d 406, 409 (5th Cir. 1970)). Here, Plaintiff was unrepresented but waived his right to representation, and, as a result, there was no special duty and Plaintiff must show prejudice caused by his lack of counsel.

Additionally, where an ALJ decides not to credit a claimant's testimony regarding subjective allegations of disability, she must articulate explicit and adequate reasons for doing so. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Be that as it may, in rejecting such testimony, the ALJ does not need to refer specifically to each piece of evidence in her decision, so long as the decision "is not a broad rejection" that does not allow the reviewing court to determine that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1211.

Here, the ALJ clearly considered Plaintiff's 2009 employment earnings and, indeed, the record reflects that she questioned Plaintiff about the discrepancy between it and his reported work history, [R36-37], even going so far as explaining the discrepancy in his testimony and reported earnings and advising him to submit his tax

33

return for that year, [R45-48], and referring to this evidence in her decision, [R17]. In fact, the ALJ gave Plaintiff the benefit of the doubt and concluded that although Plaintiff worked after his alleged onset date, the work did not rise to the level of substantial gainful employment. [*Id.*]. As a result, the Court finds no error in developing the record with respect to Plaintiff's post-2009 work history.

However, Plaintiff also claims he was prejudiced because the ALJ did not ask him about provider notes indicating that he worked part-time, but relied on them in determining that Plaintiff was not fully credible. [Doc. 26 at 20]. More specifically, Plaintiff submits that the only bases for the ALJ's credibility determination–other than treatment notes–were "numerous references to . . . working as a furniture mover" and Plaintiff a lack of candor in his statements regarding alleged work activity. [Doc. 29 at 7]. This is simply not true.

First, the ALJ referred to treatment notes not only describing Plaintiff as a furniture mover, but also renting out his truck. [R22-23]. Second, the ALJ explained that Plaintiff also was "less than candid is his statements to medical practitioners and this" ALJ because, in addition to "renting out his truck and moving furniture" he: (1) denied using marijuana but only admitting it, and providing an explanation, after it was indicated on a urinary drug screen and (2) "stated he continued to earn funds

34

from renting his truck out, but did not want to do anything that would jeopardize his pending disability claims with the VA . . . [indicating] that [he] was aware that he was earning income and that reporting he is doing so could impact his claim for disability." [R23].

The Court observes that, other than the statement included with this appeal–explaining that one treatment note reflects that his wife had him using the truck to transport a bunk bed from Goodwill–Plaintiff has not offered any argument whatsoever that explains the multiple instances in his treatment records where he reported income from using his truck. The Court further observes that, although Plaintiff claims that his wife made him work, the record is replete with references to the fact that Plaintiff has never been married and lives alone. Even if the Court accepts as true that Plaintiff did have a wife who asked him to transport a bunk bed from Goodwill, this does not explain his initial dishonesty with medical providers regarding marijuana usage nor does it explain his desire to under-report income to attain disability.

As a result, the Court finds that the ALJ's credibility determination was not an impermissible rejection of Plaintiff's testimony, as Plaintiff seems to suggest, but was instead a detailed, generally well-reasoned explanation. *See Dyer*, 395 F.3d at 1210-11;

AO 72A
(Rev.8/8
2)

*Holt*, 921 F.2d at 1223; SSR 96-7p. Consequently, the Court is not persuaded that allowing Plaintiff to explain treatment notes about earning additional income would have altered the credibility determination and finds that, to the extent this was error, it was harmless and not grounds for reversal. *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (applying harmless error analysis in Social Security case); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis where the ALJ made an incorrect statement of fact); *Young v. Astrue*, No. 8:09-cv-1056, 2010 WL 4340815, *4 (M.D. Fla. Sept. 29, 2010) (an error is harmless if it "do[es] not affect the ALJ's determination that a claimant is not entitled to benefits."). Accordingly, the Court finds no reversible error in the ALJ's credibility determination.

**C.     Whether remand is appropriate under sentence six of 42 U.S.C. § 405(g).**

As a preliminary matter, under sentence six of 42 U.S.C. § 405(g), a court may remand for the Commissioner to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into  the record in a prior proceeding." *See Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996); *Freeman v. Comm'r, Soc. Sec. Admin.*, No. 2:16-CV-1956-TMP, 2018 WL 3997237, at *3 (N.D. Ala. Aug. 21, 2018). Therefore, a case will be remanded based  on new evidence when: (1) the evidence  is

36

new and non-cumulative; (2) "the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result"; and (3) "good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Evidence is new when it is created after the administrative hearing and the ALJ's decision, and it is non-cumulative when there is no similar evidence in the administrative record. *See Butler v. Barnhart*, 347 F. Supp. 2d 1116, 1124 (M.D. Ala. 2003); *see also Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (finding evidence was new and non-cumulative when a doctor discovered claimant's herniated disc and performed the corrective surgery in May 1997, after the ALJ rendered his decision in 1996). A claimant shows good cause by establishing that the evidence did not exist until after the administrative proceedings. *Butler*, 347 F. Supp. 2d at 1124-25; *see also Vega*, 265 F.3d at 1218-19 (indicating that good cause was shown because the discovery of the herniated disc took place after the ALJ's decision); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) ("[B]ecause this new evidence did not exist at the time of the administrative proceedings [claimant] has established good cause for failure to submit the evidence at the administrative level."). In addition, new evidence must relate to the

37

time period prior to the ALJ's decision. *See Archer v. Comm'r of Soc. Sec.*, 176 Fed. Appx. 80, 82 (11th Cir. Apr. 14, 2006).

First, Plaintiff seeks remand so that the Commissioner can consider his AL Amyloidosis. [Doc. 26 at 21-22]. Plaintiff acknowledges that he was not diagnosed with this condition until two years after his hearing but, because it is a progressive impairment, "it is likely" that he "was experiencing symptoms of this condition at the time of his hearing in 2013." [*Id.* at 22]. Plaintiff submits that, where it may be possible to infer that a claimant's condition began prior to the date of first recorded diagnosis, "the ALJ should 'call on the services of a medical advisor' to evaluate when the claimant's disability commenced." [*Id.* (citing SSR 83-20, 1983 WL 31249, at *3)]. Plaintiff claims that" there is a reasonable probability that a medical expert would find" that he had this condition prior to the ALJ's decision, it is material and he has good cause for not submitting it, as the diagnoses did not occur until 2015. [*Id.* at 23].

The Commissioner responds that Plaintiff cites no evidence that he actually had AL Amyloidosis or experienced symptoms before the ALJ's decision and, even if he did, a mere diagnosis does not establish a work-related limitation. [Doc. 28 at 23]. The Commissioner also claims that Plaintiff's reliance on SSR 83-20 is misplaced as it is

38

applicable only after there is a finding of disability and it is necessary to determine when the disability began. [*Id.* at 23 (citing *Caces v. Comm'r, Soc. Sec. Admin.*, 560 Fed. Appx. 936, 939 (11th Cir. Mar. 27, 2014); SSR 83-20; *Klawinski v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 772, 776 (11th Cir. Aug. 6, 2010))]. Plaintiff replies that he anticipates no dispute concerning his disability and his speculation is "informed speculation." [Doc. 29 at 9].

Plaintiff's AL Amyloidosis diagnosis did not exist at the time of the hearing before the ALJ. Therefore, it was new and Plaintiff had good cause for not submitting it, and thus, the only relevant inquiry is whether it was material or "a reasonable possibility exists that the new evidence would change the administrative result[.]" *Falge*, 150 F.3d at 1323.

Even accepting, as Plaintiff argues, that this condition was progressive, Plaintiff–who is now represented by counsel–has the burden of proving that he is disabled by identifying medical and other evidence that shows he is disabled. 20 C.F.R. § 404.1512(a); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that despite ALJ's duty to fully develop the record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence to in support of his claim."). However, the

AO 72A
(Rev.8/8
2)

evidence attached to Plaintiff's brief makes no assertion that it caused the symptoms he asserts are disabling. As discussed in Part VII(A) *supra*, a mere diagnosis is insufficient to show disability.

Moreover, Plaintiff is not entitled to additional opinions from medical experts under SSR 83-20 because the issue is not when a disability arose due to AL Amyloidosis, but whether he was disabled under the Social Security Act at all. *Caces*, 560 Fed. Appx. at 939; *see also Klawinski*, 391 Fed. Appx. at 776 ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that Klawinski was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability.").

In addition, the Court's scheduling order made clear that requests for the Court to remand the case to the Commissioner to consider new evidence must attach the evidence to be considered on remand:

> . . . [I]f the remand is for the purpose of taking additional evidence, such evidence must be attached to the brief, or, if such evidence is in the form of a consultative examination sought at government expense, Plaintiff must make a proffer of the nature of the evidence anticipated to be obtained.

AO 72A
(Rev.8/8
2)

[Doc. 20 at 2-3, ¶ 1(c)]. Here, although, Plaintiff attached evidence of his AL Amyloidosis diagnosis to his brief, the evidence does not demonstrate that AL Amyloidosis had any affect whatsoever on his ability to work.[27] In addition, to the extent that Plaintiff seeks additional medical opinions related to his AL Amyloidosis diagnosis and any impact it has on his ability to work (particularly during the period when he was insured), he made no proffer of what disabling symptoms he anticipated linking to AL Amyloidosis.

As a result, Plaintiff has not shown that the new diagnosis relates back to his allegedly disabling symptoms during the relevant period. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (holding new evidence following disability period was irrelevant because it was two years after ALJ decision). Accordingly, Plaintiff fails to show that his diagnosis is material and the Court concludes that remand under sentence six of 42 U.S.C. § 405(g) is not warranted.

---

[27] The exhibit reflects that Plaintiff was diagnosed with AL Amyloidosis on February 4, 2015; that there is documented involvement of his GI tract, and suspected involvement of the liver and spleen; and that as of the date of the March 18, 2015 letter, he was receiving chemotherapy and his "condition is considered terminal and incurable." Dr. Ribeiro wrote that Plaintiff was a Vietnam War era veteran and was exposed to Agent Orange, and "AL Amyloidosis is a presumptive Agent Orange disability." [Doc. 26-1 at 2].

41

Second, Plaintiff claims that remand is warranted to consider his written statement that he "never rented out his truck or moved furniture for pay or profit." [Doc. 26 at 23]. Plaintiff claims that this is new evidence because it was not previously submitted to the ALJ, material because it could have altered her assessment of Plaintiff's credibility, and he had good cause for not submitting it earlier because he was not represented. [*Id.* at 23-24]. The Commissioner responds that Plaintiff's assertion regarding his letter is pure speculation. [*Id.*].

As explained Part VII(B) *supra*, it is not reasonable to conclude that Plaintiff's explanation that one treatment note reflects that his wife had him using the truck to transport a bunk bed from Goodwill would alter the ALJ's credibility determination in light of multiple instances in his treatment records where he reported income from using his truck, the ALJ's conclusion that Plaintiff was initially dishonest with medical providers regarding marijuana usage, discrepancies concerning his work history between his testimony and 2009 tax returns, and his stated desire to under-report income to attain disability. As a result, the Court concludes that Plaintiff's letter is not material.

In addition, the information contained in Plaintiff's letter is not new, nor was there good cause for not offering it until his appeal to district court. While Plaintiff

AO 72A
(Rev.8/8
2)

may not have written the letter until after the ALJ's decision and while he was unrepresented, his letter amounts to an explanation and is not in the same vein as the types of medical records that courts commonly consider under sentence six. First, although Plaintiff claims he did not realize that his treatment records contained references to his part-time employment and that the ALJ would rely on them, [Doc. 26 at 24], he was aware of them after the ALJ issued her decision. Second, Plaintiff was able to request review by the Appeals Council, [R10], and correspond with it, [R4], and he could have included this information in his administrative appeal. Third, the "good cause" requirement is to prevent manipulation of the administrative process by discouraging a claimant from withholding evidence until after an adverse administrative decision is issued. *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987). That is precisely what Plaintiff seeks to do here. Accordingly, Plaintiff has failed to show that his explanation was new, material, or that there was good cause for not submitting it earlier. As a result, the Court **DENIES** remand under sentence six.

## VIII. *CONCLUSION*

For all of the above reasons, the final decision of the Commissioner is **AFFIRMED** and the Court **DENIES** Plaintiff's request for remand under sentence six of 42 U.S.C. § 405(g).

AO 72A
(Rev.8/8
2)

The Clerk is **DIRECTED** to enter judgment for Defendant.

**IT IS SO ORDERED and DIRECTED**, this the 24th day of September, 2018.


_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)